IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CALVIN JEROME BROOKS, #179333, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-899-ECM-KFP |
| | ) | |
| JOHN CROW, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| CALVIN JEROME BROOKS, #179333, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-906-ECM-KFP |
| | ) | |
| CASSANDRA CONWAY, | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| CALVIN JEROME BROOKS, #179333, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CV-197-ECM-KFP |
| | ) | |
| LT. JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

Calvin Jerome Brooks, an indigent state inmate, filed this action under 42 U.S.C. § 1983 challenging actions during his incarceration at Easterling Correctional Facility. Doc. 1. Brooks, who is currently housed at Frank Lee Community Based Facility and Community Work Center, also filed two other cases. The cases have been consolidated with *Brooks v. Crow,* 2:20-CV-899-ECM-KFP, designated as the lead case.[1] Brooks alleges a failure-to-protect deliberate indifference claim related to his return to Easterling in 2020 following a stint on parole and a First Amendment retaliation claim related to his failure-to-protect lawsuit. Doc. 1 at 4.

Collectively the Defendants are Easterling Wardens John Crow and Monica McCoy, Classification Director Cassandra Conway, Lieutenant Dominic Jones, and Captain Joseph Danzey.[2] Brooks does not specify whether he sues each Defendant in their individual or official capacities. He seeks monetary damages and injunctive relief in the form of a transfer from Easterling.

In response to Brooks's pleadings, Defendants filed Special Reports with supporting evidentiary materials (specifically, affidavits and prison documents) addressing Brooks's

---

[1] *See Brooks v. Conway,* 2:20-CV-906-ECM-KFP at Doc. 4 ("Member Case 20-CV-906") and *Brooks v. Jones, et al.,* 2:21-CV-197-ECM-KFP at Doc. 5 ("Member Case 21-CV-197").

[2] Defendants filed an Answer and Special Report on behalf of all Defendants, including "Captain Dan**sby**" (Doc. 40 at 1), who is the individual Brooks named in his complaint (Doc. 1, Member Case 21-CV-197). Defendants list as party someone similarly named, "Defendant, Joseph Dan**zey** (Captain Danzey)." Doc. 40 at ¶ 6. While neither Defendants nor Brooks makes clear that the named Defendant Captain Dans**by** is the party identified by Defendants as "Defendant, Joseph Dan**zey** ('Captain Dan**zey**')," Brooks has not challenged or objected in any way to Defendants' apparent substitution of Captain Danzey for the named Captain Dansby. Thus, it appears to the Court that Brooks simply misspelled this defendant's name. The Court will use the spelling provided by Defendant.

claims. Docs. 17 and 40. The Court construed Brooks's complaint in member case 21cv197 to raise a First Amendment retaliation claim and ordered Defendants to respond to it. Doc. 54. Defendants filed their response in opposition to Brooks's First Amendment retaliation claim (Doc. 56), and the Court construes this as a supplement to the Special Reports.

After reviewing the Special Reports and exhibits, the Court issued an Order requiring Brooks to file a response supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 41. This Order specifically cautioned that "**unless a party files a response in opposition presenting legal cause within fifteen (15) days from the date of this Order,** the Court may at any time and **without further notice to the parties** (1) treat the Special Report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." Doc. 41 at 3. The Court now treats Defendants' Special Reports and supplement (Docs. 17, 40, and 56) as motions for summary judgment and Brooks's response (Doc. 42) as an opposition to the motions. Upon consideration of the motions, the Court concludes that summary judgment is due to be GRANTED in part and DENIED in part.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of

law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## III.  FACTS

While he was housed at Easterling in 2011, Brooks asserts that he was beaten by ADOC officers in connection with allegations that Brooks was having an affair with two nurses at the facility. *See* Doc. 42 at 2. As a result of the incident, Brooks was transferred

from that facility during an investigation, and he says ultimately "barred" from future placement at Easterling. For a time thereafter, Brooks was incarcerated at Kilby Correctional Facility. Doc. 40-1. Brooks was released from incarceration approximately five years later, in 2016. Doc. 1 at 4.

Following a parole violation, and as Brooks alleges contrary to his permanent bar, Brooks was later returned as an inmate to Easterling on March 17, 2020. Doc. 17-2 at 1, Doc. 1 at 4. Brooks complains that he was placed around "the same nurse" who was involved in the 2011 incident and "some of the same officers" who beat him. Doc. 1 at 4. Brooks claims that his placement back at Easterling "plac[ed] [his] life back in jeopardy." Doc. 1 at 4. However, Defendants' evidence confirmed that at least as of the date of ADOC employee Yashana Adams's affidavit on March 9, 2021, none of the ADOC officers involved in the 2011 incident worked at Easterling; only one officer who was involved in the prior incident even remained employed by the ADOC at that time but that officer was assigned elsewhere. Doc. 17-4 at 1–2. In his subsequent response, Brooks conceded that "the officers who [were] involved in his brutal beat[ing] know [sic] longer work[] for the Department of Corrections." Doc. 42 ta 2.[3]

Contrary to Brooks's claim, Classification Director Cassandra Conway testified that Brooks's "file contains no documentation of a permanent bar from placement at Easterling

---

[3] Defendants evidence does not address whether any of the nurses who were involved in the 2011 incident remained at Easterling when Brooks returned in 2020. While Brooks alleges two nurses were still at Easterling when he returned, Brooks does not allege that the nurses were employed by ADOC or that they engaged in any wrongful conduct toward him.

by any ADOC official." Doc. 40-1 at 2. The incident report from July 1, 2011, confirms an altercation at Easterling between ADOC personnel and Brooks, after which he was transferred from Easterling. Docs. 17-3 and 17-4. Brooks was transferred to Kilby Correctional Facility during an internal investigation of the incident. Doc. 40-1. Subsequently, on October 13, 2011, the ADOC approved Brooks's transfer from Kilby "to any SL IV with the exception of Easterling." Doc. 40-1.

Brooks filed a lawsuit related the 2011 incident. *See* Case No. 2:11-CV-723-WHA. In 2012, the state and Brooks entered into a settlement agreement with Brooks regarding the 2011 incident. Doc. 17-4. The settlement agreement, which Defendants have filed with their Special Report, includes no provision prohibiting Brooks's placement at Easterling. *Id.*

In this consolidated case, Brooks claims that Classification Director Conway is liable to him because she knew about the 2011 incident and the permanent prohibition against his return to Easterling, yet she allowed his return to Easterling in 2020. *See* Member Case 20-CV-906 at Doc. 1 at 3. Conway, however, testified that she had no "specific knowledge of inmate Calvin Brooks' classification and facility placement upon his return to ADOC in February of 2020." Doc. 40-1 at 2. Likewise, Warden Crow was not assigned to Easterling in 2011 and was unaware of the 2011 incident at Easterling with Brooks. Doc. 17-1 at 1. Warden McCoy similarly testified that she was not assigned to Easterling in 2011 and has no knowledge of a bar precluding him from being housed there. Doc. 17-2 at 1.

Since he filed the failure-to-protect lawsuit, Brooks has been transferred to other correctional facilities at least twice. The docket demonstrates at least by June 9, 2022, Brooks was not housed at Easterling. Doc. 48.

Brooks alleged that because of the civil action he filed against the wardens (*see* Lead Case 20-CV-899 at Doc. 1), Lieutenant Jones and Captain Danzey "verbally 'threaten' my life, by assuring me they would 'pay' some inmates too [sic] 'harm' my life" (*see* Member Case 21-CV-197 at Doc. 1-1 at 1). Danzey and Jones denied threatening Brooks. Docs. 40-2 and 40-3.

## IV.   DISCUSSION

### A.   ABSOLUTE IMMUNITY

To the extent Brooks lodges claims against Defendants in their official capacities and seeks monetary damages, Defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity,

*see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states
> that "the State of Alabama shall never be made a defendant in any court of
> law or equity." Ala. Const. art. I, § 14. The Supreme Court has recognized
> that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent

is prohibited by the Alabama Constitution)). "Alabama has not waived its Eleventh

Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*,

701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d

1521, 1525 (11th Cir. 1990)). In light of the foregoing, Defendants are entitled to sovereign

immunity under the Eleventh Amendment for claims seeking monetary damages from them

in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157

F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities

are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace

Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable

from state official sued in his official capacity). Accordingly, all claims against Defendants

in their official capacities for monetary damages are due to be dismissed.

The Court now turns to Brooks's claims against Defendants in their individual

capacities for both monetary damages and injunctive relief.

### B.   INJUNCTIVE RELIEF

Brooks asks this Court to order his transfer from Easterling to another facility.

Under Eleventh Circuit precedent, "a transfer or a release of a prisoner from prison will

moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen,* 502 F. 3d 1255, 1267 (11th Cir. 2007), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021), and *abrogated on other grounds by Sossamon v. Texas,* 563 U.S. 277 (2011); *see also Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (per curium). Because Brooks has been transferred from Easterling Correctional Facility and is now housed at ADOC Frank Lee Community Based Facility and Community Work Center in Deatsville, Alabama (Doc. 49), his claims for injunctive and declaratory relief are moot and due to be dismissed.

### C.     FIRST AMENDMENT RETALIATION

Brooks asserted a First Amendment retaliation claim against Defendants Lieutenant Jones and Captain Danzey. Doc. 1-1, Member Case 21-CV-197. In his verified complaint, he alleged that because of the prior civil action he filed against the wardens (20-CV-899), Lieutenant Jones and Captain Danzey "verbally 'threaten' my life, by assuring me they would 'pay' some inmates too [sic] 'harm' my life for them & cover the incident up since they have the supervision [sic] & ranking authority to do so." Doc. 1-1 at 1, Member Case 21-CV-197. Defendants Jones and Danzey deny that they ever threatened Brooks. Docs. 40-2, 40-3.

It is well established that prisoners have a right under the First Amendment to file lawsuits to pursue redress of grievances. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011).

Prison officials violate the First Amendment when they threaten a prisoner for exercising this right. *Pittman v. Tucker*, 213 F. App'x 867, 870–71 (11th Cir. 2007) (threats made to deter inmate's filing of a grievance violates the First Amendment). The Eleventh Circuit has employed a three-part "ordinary firmness" test for evaluating a First Amendment retaliation claim. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Under this test, a plaintiff, like Brooks, must establish: (1) that his speech or act was constitutionally protected; (2) that defendants' retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the defendants' retaliatory actions and the adverse effect on speech. *Pittman*, 213 F. App'x at 870 (citing *Bennett*, 423 F.3d at 1250). The adverse action element is deduced from a reasonable person viewpoint. That is, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254.

As to the first element, Brooks's right to file a lawsuit is a constitutionally protected right. *Smart v. England*, No. 22-11738, 2024 WL 655474, at *4 (11th Cir. Feb. 16, 2024) ("A prisoner may state a claim under the First Amendment when he alleges that he was punished for filing a grievance concerning the conditions of his imprisonment.") (quotation omitted). Here, Brooks filed a lawsuit in federal court alleging he was being held in unsafe conditions at Easterling prior to the alleged threats from Defendants Danzey and Jones.

The second elements is also satisfied. Viewed in the light most favorable to Brooks, his evidence shows that after he filed the lawsuit, Defendants Danzey and Jones threatened

him with physical harm—harm they promised would come from other inmates whom they would pay to attack Brooks because Defendants Danzey and Jones had "the supervision & ranking authority to do so." Doc. 1-1, Member Case 21-CV-197. Brooks specifically alleges Danzey and Jones stated the threats were "*because* I filed a civil sue on their Wardens at this institution, they claim I'm drawing 'too' much attention on their fellow officers & themselves . . . ." Doc. 1-1, Member Case 21-CV-197 (emphasis added). They told Brooks he was "the problem by filing all these paperwork & putting outsiders people that has high power position, in the prison system business." *Id*. Construing those comments together, and giving all reasonable inferences to Brooks as the non-moving party, Brooks has shown that Defendants Jones and Danzey threatened him because of Brooks's failure-to-protect lawsuit.

The Court further concludes that Defendants Jones and Danzey engaged in conduct that adversely affected the protected speech, the second part of the three-part test. *Bennett*, 423 F.3d at 1250–51. Defendants argue that no harm has come to Brooks since the threats were made, but the proper inquiry is whether the challenged conduct "would likely deter a person of ordinary firmness from the exercise of his First Amendment rights." *Pittman*, 213 F. App'x at 870 ("plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights"). In this case, Brooks's evidence is that Danzey and Jones told him they knew he had filed a lawsuit and,

because of it, threatened him with inflicting harm through the hands of purchased inmate-attackers. Under these circumstances, a reasonable person would be deterred from exercising his First Amendment rights by pursing a lawsuit.

Finally, there is a causal connection between their actions and the adverse effect on speech. The timeline and communications Brooks has alleged, supported in his verified complaint, demonstrate a connection between his free speech (the failure-to-protect lawsuit) and the threatened harm. Defendants deny making any threats. Thus, there is a fact question best resolved by the jury as to whether Brooks has demonstrated the violation of his First Amendment rights. Because the evidence is disputed as to whether Jones and Danzey made any of the threats, summary judgment must be denied as to the First Amendment retaliation claim. *See Johnson v. Massey*, No. 4:20CV410-MW-MAF, 2023 WL 2167441, at *11–12 (N.D. Fla. Jan. 27, 2023), *report and recommendation adopted*, No. 4:20CV410-MW-MAF, 2023 WL 2163942 (N.D. Fla. Feb. 21, 2023).

### D.    QUALIFIED IMMUNITY

Defendants made passing reference to qualified immunity, stating "[m]onitoring and restraining violent inmates is a dangerous undertaking that requires the use of discretion." Doc. 17 at 6; Doc. 40 at 7. While Brooks is incarcerated, there are no facts in this record demonstrating the reason for his incarceration. Further, there are no facts asserted or revealed on this record that Brooks is either violent or dangerous. Defendants, perhaps, intended this statement to demonstrate that corrections officers like Jones and Danzey were acting within their discretionary function to the extent they interacted with

Brooks. Defendants make a cursory qualified immunity argument: "Brooks has failed to allege any substantiated act or injury caused by the Defendants in this matter that rises to a constitutional violation of his rights as a prisoner. Defendants are entitled to qualified immunity." Doc. 17 at 6–7, Doc. 40 at 7.

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).

> To obtain a dismissal based on qualified immunity, "a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." . . . If he was, the burden then shifts to the plaintiff to overcome the official's qualified immunity. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). To overcome qualified immunity, a plaintiff must "plead[ ] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

*Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019).

Even if the Court were to find the defense adequately raised here, it cannot be applied here to shield the conduct of Defendants Jones and Danzey. The burden is initially on Defendants to demonstrate they were acting within their discretionary authority. Although they have put forth little to nothing on this subject, there appears to be no dispute that Defendants Jones and Danzey were acting within their discretionary authority as corrections officers, given that Brooks alleges they made the threats to him in their capacity as officers and asserting their authority as such. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994) ("A government official acts within his or her

discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority.").

Given that the Court has found the constitutional right existed and there is a jury question as to whether the Defendants violated that constitutional right, for the qualified immunity analysis, the Court must next determine whether the law was clearly established so as to put these Defendants on notice that their behavior violated Brooks's rights. "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is "apparent . . . and if a constitutional rule applies with 'obvious clarity' to give an official 'fair warning' that violating that right is actionable." *Bennett*, 423 F.3d at 1255 (internal citations and quotations omitted). The Eleventh Circuit has made clear it was. "We concluded as early as 1989—well before this decision was made—that a prisoner's First Amendment free speech rights are violated when prison officials retaliate against him or her for filing a grievance." *Hicks v. Ferrero*, 241 F. App'x 595, 598–99 (11th Cir. 2007) (citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989)).

Thus, the law was clearly established at the time of Defendants Jones's and Danzey's alleged actions following Brooks's 2020 lawsuit that retaliation against an inmate for exercising his First Amendment rights by challenging his conditions as unsafe in a lawsuit was actionable. Reasonable prison officials should have realized at the time of their alleged retaliatory actions that they were violating a clearly established constitutional right. As cases like *Wildberger* demonstrate, this is settled law—officers may not retaliate against

inmates for exercising their First Amendment rights. Defendants Jones and Danzey were on notice and had fair warning that retaliating against Brooks for filing his failure-to-protect lawsuit would violate his constitutional rights and, if Brooks's allegations are true, would lead to liability. Their qualified immunity defense should be denied.

### E.    DELIBERATE INDIFFERENCE

As explained below, Brooks's damages claim based on deliberate indifference is due to be dismissed.

### 1.  Standard for Failure-to-Protect Eighth Amendment Claim

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). Thus, an inmate must show "an objectively substantial risk of serious harm . . . exist[ed]. [O]nce it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively

unreasonable manner." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

"Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

## 2.   Failure-to-Protect Claim Cannot Survive Summary Judgment

As outlined above, to survive Defendants' properly supported motion for summary judgment, Brooks must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendant[s] disregarded that known risk by failing to respond

to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). "There must be a 'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (citations omitted).

Brooks alleges that Wardens Crow and McCoy and Classification Director Conway acted with deliberate indifference to his safety when they allowed him to be housed in or remain housed in Easterling in 2020, even though he had been barred from placement at Easterling, and he alleges he "confronted both Warden[]s that his placement at Easterling wasn't available for him." Doc. 1 at 4, Doc. 41-1 at 1.

Brooks's arguments and this evidentiary record, however, demonstrate that he cannot meet the first hurdle—to show objectively substantial risk of serious harm. Brooks does not allege any harm to his person from anyone while he was housed at Easterling following his return in 2020—nearly ten years after the 2011 incident he alleges gave rise to a permanent bar from Easterling. His failure-to-protect claim is based on his allegation that he was barred from Easterling because it was unsafe for him to return given his involvement in the 2011 incident with nurses and officers. A permanent bar might support an inference that there was a safety-based reason Brooks was forbidden from returning to that facility, but no such finding can be made on this record.  First, the factual record does not support Brooks's claim that he was permanently barred from placement at Easterling. Docs. 40-1, 17-3, 17-4 at 1-2. His file reflects that he was transferred to Kilby in 2011 while an investigation was ongoing and, at that time, he was permitted to be transferred

from Kilby "to any SL IV with the exception of Easterling." Doc. 40-1 at 5. Wardens Crow and McCoy and Classification Director Conway all testified that they were unaware of a permanent bar on Brooks's returning to Easterling. Doc. 17-1, 17-2, 40-1. McCoy further testified that Brooks's file reflects no permanent bar from being housed at Easterling. *See* Doc. 40-1 at 2. Thus, there is no basis to conclude, when Brooks was returned to prison following a parole violation nearly ten years after the investigated 2011 incident, that there was any prohibition, to protect his safety, on his placement at Easterling. Second, Brooks concedes that the officers who were involved in his 2011 beating were no longer at Easterling when he returned in 2020. Other than the alleged permanent bar from Easterling, there are no facts asserted to support Brooks's claim that he was wrongfully returned to Easterling and in allowing that occurrence the Defendants failed to protect him.[4]

Brooks's failure-to-protect claim, which is lodged against the Wardens and Conway, does not find support in this record to conclude there was a substantial risk of harm and that these Defendants were aware of any such risk. As noted, for his failure-to-protect claim, Brooks must show that he was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, that the "prison official [had] a sufficiently culpable state of mind," amounting to "deliberate indifference," *id*., and

---

[4] Brooks's allegations with respect to Defendants Jones and Danzey are not part of the failure-to-protect claim. They are analyzed above as part of his First Amendment retaliation claim, as he asserts these Defendants threatened him, not in relation to or with knowledge of the 2011 incident, but in relation to his 2020 failure-to-protect lawsuit. In other words, their conduct, if Brooks's claims are credited, is not part of the conditions alleged to render his return to Easterling following parole a place where he faced a substantial risk of serious harm. In any event, he does not allege that these Defendants had any part in his placement at Easterling.

causation—that the constitutional violation caused his injury. *Cox v. Nobles*, 15 F.4th 1350, 1357–58 (11th Cir. 2021) (citing, among others, *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)). Brooks fails to establish that he was incarcerated under conditions posing a substantial risk of serious harm. Additionally, he fails to establish Defendants' knowledge he faced substantial risk of serious harm, so there can be no inference drawn that Defendants knew he was in danger (and then disregarded it by failing to respond in an objectively reasonable manner). With these elements of his claim foreclosed, summary judgment is due to be granted to each Defendant on Brooks's failure-to-protect claim.

### F.     RESPONDEAT SUPERIOR

To the extent Brooks alleges that Wardens Crow and McCoy are liable to him in their supervisory positions for the actions or omissions of their subordinates based on a theory of respondeat superior, that claim must fail. The law is well established that supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability. *See Belcher v. City of Foley,* 30 F.3d 1390, 1396–97 (11th Cir. 1994). As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of respondeat superior [or vicarious liability] . . . . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *see also Cottone,* 326 F.3d at 1360 (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability").

Thus, liability could attach to the wardens only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone,* 326 F.3d at 1360; *see also Iqbal,* 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). On this record, it is clear that neither Crow nor McCoy participated or had direct involvement with the placement of Brooks at Easterling. Further, they had no knowledge of official action permanently barring Brooks from placement at Easterling. Docs. 17-1 and 17-2.

To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone,* 326 F.3d at 1360 (internal punctuation and citations omitted). After careful review of the pleadings and evidentiary materials, the Court

concludes that Brooks fails to present any such evidence. Therefore, summary judgment is due to be granted in the Defendant Wardens' favor on any claims asserting respondeat superior or vicarious liability.

## V.     CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS the following:

1.      Defendants' Motions for Summary Judgment (Docs. 17, 40, 56) be GRANTED in part and DENIED in part.

2.      Defendants' Motions for Summary Judgment (Docs. 17, 40, 56) be GRANTED as to monetary damages lodged against Defendants in their official capacity and these claims be DISMISSED with prejudice, as Defendants are entitled to absolute immunity from such relief.

3.      Defendants' Motions for Summary Judgment (Docs. 17, 40, 56) be GRANTED as to Brooks's § 1983 failure-to-protect claim against Defendants Crow, McCoy, and Conway in their individual capacities and these claims be DISMISSED with prejudice.

4.      Defendants' Motions for Summary Judgment (Docs. 17, 40, 56) be DENIED as to Brooks's First Amendment retaliation claim against Defendants Jones and Danzey in their individual capacities.

5.      This case be set for a bench trial on Brooks's First Amendment retaliation claim.

6.      This case be referred back to the undersigned Magistrate Judge for mediation on Brooks's First Amendment retaliation claim.

Further, it is ORDERED that by **March 20, 2024,** the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See* 11TH CIR. R. 3–1.

DONE this 6th day of March, 2024.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE